JOURNAL ENTRY and OPINION
{¶ 1} This is an appeal by Zoltek Companies from a court order enforcing the terms of a settlement agreement that Zoltek entered into with Master Builders, Inc., Degussa Construction Chemicals Operations, Inc., and Degussa Corporation. The issues raised in this appeal concern the propriety of the court's decision to enforce the settlement agreement.
 {¶ 2} The parties were involved in the sale of a business. Master Builders and Degussa sold assets to a company called Hardcore Composites Operations. Hardcore agreed to pay $1 million in cash, and $1 million by way of a note. Hardcore also agreed to sublet the premises then leased by Degussa, and further agreed to exercise an option then held by Degussa to purchase the premises. Zoltek agreed to guarantee Hardcore's note and sublease.
 {¶ 3} When Hardcore defaulted on the note (it later filed for bankruptcy), Master Builders and Degussa brought suit against Zoltek and Hardcore on both the sales contract and the guarantee. The parties settled that dispute on April 26, 2002 with a settlement agreement that set forth in considerable detail the terms of their agreement. As relevant here, the settlement provided that Hardcore and Zoltek, jointly and severally, agreed to pay Degussa $892,540.96 on or before April 30, 2002. This was called the "first settlement payment." The settlement also provided that Hardcore and Zoltek would pay $450,000, that amount reflecting the principal outstanding under the note after the $850,000 payment. The $450,000 payment was called the "second settlement payment." Another section of the agreement provided that Hardcore and/or Zoltek agreed to make the second settlement payment if and when any payment for rent or other charges due under the sublease remained unpaid for more than 90 days after that payment was due.
 {¶ 4} In October 2003, Master Builders and Degussa again filed suit against Hardcore and Zoltek, this time alleging that Hardcore and Zoltek breached the terms of the settlement agreement. Master Builders and Degussa filed a motion for summary judgment on their complaint, arguing that Zoltek had not actually denied any of the allegations of the complaint, instead answering that the terms of certain exhibits attached to the complaint "speak for themselves." The court granted the motion in part, rendering judgment on counts two and four of the complaint. Those counts related to Zoltek's obligations under the Lease/Purchase Guaranty and its obligations under the settlement agreement. The court deferred ruling on damages until trial.
 {¶ 5} On September 20, 2004, the date on which trial was scheduled to commence, the parties informed the court that they had agreed to settle their differences arising from the first settlement agreement. They expressly reincorporated and reaffirmed the force and effect of the April 2002 settlement. They agreed that Zoltek would not be in default of the agreement subject to its payment of obligations under the agreement. The settlement agreement provided that Zoltek would make a payment of $600,000 on or before September 30, 2004. In addition, Zoltek was to make a payment of $85,000 on or before "February 15, 2004 [sic]."
 {¶ 6} Just two weeks later, on October 5, 2004, Master Builders and Degussa filed a motion to enforce the September 2004 settlement agreement. The motion alleged that Zoltek had refused to make the $600,000 payment as required by the agreement. The court overruled Zoltek's request for an extension of time in which to respond to the motion to enforce, and then reduced the terms of the settlement agreement to judgment.
 {¶ 7} Zoltek appealed, but we dismissed that appeal for want of a final order because the court had not disposed of Zoltek's cross-claims against Hardcore (Hardcore was under a bankruptcy stay at the time). See Master Builders, Inc. v. HardcoreComposites Operations, Cuyahoga App. No. 85568, 2005-Ohio-4577. On remand, Zoltek filed a motion for reconsideration of the judgment enforcing the settlement agreement, but the court denied the motion. After issuing the proper certification of no just reason for delay, this appeal followed.
 I {¶ 8} Settlement agreements are favored by the law, for they promote the mutual resolution of disputes (which is typically more satisfying to the parties than a unilateral judgment) and conserve judicial resources. Wright v. Weyandt (1977),50 Ohio St.2d 194, 197. A settlement agreement is a contract, enforceable as such by either party. Spercel v. Sterling Industries (1972),31 Ohio St.2d 36, 38. Because it is a contract, we review the terms of the agreement de novo, and as a matter of law. In reAll Kelley Ferraro Asbestos Cases, 104 Ohio St.3d 605,2005-Ohio-7104, at ¶ 28.
 II {¶ 9} Section 16 of the first settlement agreement states:
 {¶ 10} "If Hardcore and/or Zoltek shall fail to timely make the Settlement payment in accordance with the terms of Section 1 hereof, this Settlement Agreement shall be null and void and of no further force or effect and the parties hereto shall retain all rights and remedies available to them immediately prior to the execution of this Settlement Agreement."
 {¶ 11} When the parties entered into the second settlement agreement, they stated that:
 {¶ 12} "The Settlement Agreement attached hereto as Exhibit 1 [the first settlement agreement] and the Zoltek Lease/Purchase Guaranty attached hereto as Exhibit 2 are in full force andeffect, and the parties reaffirm their obligations thereunder, and subject to the payments and receipt of the sums provided herein, that Zoltek is not in default or breach of the Settlement Agreement or Zoltek Lease/Purchase Guaranty." (Emphasis added.)
 {¶ 13} A court's primary goal in contract cases is to give effect to the intent of the parties. Aultman Hosp. Assn. v.Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 53. It is therefore fundamental that contract terms are to be given their plain and ordinary meaning. Gomolka v. State Auto. Mut. Ins. Co.
(1982), 70 Ohio St.2d 166, 167-168. This is because "[t]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v. Med.Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus.
 {¶ 14} Section 16 of the first settlement agreement and the ratification language used in the second settlement agreement are unambiguous. Section 16 states that regardless of what the parties agreed to in the settlement agreement, Zoltek's failure to make a payment as provided for by the settlement agreement renders the settlement agreement null and void — the parties are therefore returned to the status quo existing at the time just prior to their adoption of the settlement agreement. The second settlement agreement expressly stated that the terms of the first settlement agreement remained in full force and effect.
 {¶ 15} Master Builders and Degussa make no argument relating to the application of section 16. They expend a great deal of effort to show that the second settlement agreement somehow supersedes the first settlement agreement. That might have been the case had not the parties agreed that the terms of the first settlement agreement, including section 16, remained in full force and effect. Moreover, none of the terms of the second agreement supersede section 16. To be sure, the parties agreed to new payment terms. Those terms arguably amended section 1 of the first settlement agreement. But the amended terms were, once again, subject to section 16 of the agreement which voided the settlement in the event that Zoltek failed to make its payments.
 {¶ 16} We are at a loss to understand why Master Builders and Degussa agreed to reincorporate section 16 into the second settlement agreement. On its face, that section would appear to be at odds with the purpose behind the second settlement agreement. Nevertheless, the intent of the parties is presumed to reside in the language used in their agreement. That language is clear and unambiguous. It permits no other conclusion than that by failing to make the payment on or before September 30, 2004, Zoltek effectively rendered the second settlement agreement null and void.
 {¶ 17} We therefore find that the court erred by enforcing the second settlement agreement when the plain terms of that agreement precluded enforcement under the circumstances. The court's judgment is vacated and the parties are restored to all rights available to them immediately prior to the execution of the second settlement agreement. The remaining assignments of error are moot.
Judgment reversed and remanded.
This cause is reversed and remanded for proceedings consistent with this opinion.
It is, therefore, ordered that said appellant recover of said appellee its costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Colleen Conway Cooney, P.J., and Patricia Ann Blackmon, J.,concur.